**HROBLAK, Plaintiff-Appellee, v METROPOLITAN LIFE INSURANCE CO., Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3150. Decided April 10, 1947.

Leda C. Hartwell, Youngstown, for plaintiff-appellee.
Hammond, Hoyt & Hammond, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Plaintiff, the named beneficiary in a certificate evidencing issuance of a group insurance policy by defendant Metropolitan Life Insurance Company, a New York corporation, upon the life of his father Michael Hroblak, who at the time of such issuance was an employee of Republic Steel Corporation, filed an action in the court of common pleas to recover the sum of $1,000.00, the face value thereof.

A jury in the trial court returned an unanimous verdict in favor of plaintiff for the amount prayed for upon which the trial judge subsequently duly entered judgment, and from which defendant appealed to this court on questions of law.

In his amended petition plaintiff alleged the execution and delivery of such certificate to insured, his death, plaintiff's demand for and defendant's refusal of payment of the amount thereof; and in part in the language of the Extended Death Benefit Clause of the Master Policy alleged:—

"* * * that at the time of his death, the Decedent was employed by the Republic Steel Corporation and that said employment had not terminated, and that at the time of his decease and for some time prior thereto, he had been disabled by disease so as to have been prevented from engaging in any and every business and occupation, and from performing any and all work for compensation and profit.

"* * * that on or about the 22nd day of June, 1942, following said death, he notified the Local Agent of said Company of the occurrence of the death, and that said Local Agent received and accepted said notice, and that said Agent did, thereupon and during the period provided for filing proofs of loss, advise him that said Defendant denied all liability under said Contract, did not pay the Loss sustained by this Plaintiff, and refused to furnish him with necessary proofs of loss."

In its answer defendant admitted the execution and delivery of such certificate to insured, his death, plaintiff's demand for and its refusal of payment of the amount thereof, but specifically denied the quoted allegations of plaintiff's amended petition; and in the second and third defenses thereof alleged that insured's employment with Republic Steel Cor—

poration had terminated at the time of his death and it was no longer liable on such policy; that insured was not disabled so as to come within the provisions of the extended death benefit clause thereof; and that due notice of such disability and proof of insured's death were not furnished to it within ninety days thereafter as required by the provisions of such extended death benefit clause.

In his reply to defendant's answer plaintiff alleged that insured was in the employ of Republic Steel Corporation at the time of his death; that he was continuously and permanently disabled as alleged in his amended petition; and that defendant "waived the conditions alleged in the answer with respect to giving notice of proof of death as stated in his amended petition".

Both parties introduced evidence in an attempt to support the allegations of their respective pleadings.

The evidence discloses that upon employment inquiry was made of insured by an employee of Republic Steel Corporation whether he desired insurance, and that after becoming insured without physical examination the premiums due thereon were deducted from his pay by the Republic Steel Corporation and paid direct to defendant, Metropolitan Life Insurance Company, as long as he worked for Republic Steel Corporation; and that insured could have kept his insurance in full force and effect when not working by paying the amount of such premium to a named employee of the Republic Steel Corporation, which he failed to do.

The evidence further discloses that insured last worked at Republic Steel Corporation on February 14, 1942, and died on June 21, 1942, without having resigned or giving it any notice of his disability or of his intention either to, or not to, return to work; that because he had not worked between the dates of February 14, 1942, and April 14, 1942, (which termination, notwithstanding the allegations of her amended petition, counsel for plaintiff admitted by brief) Republic Steel Corporation terminated his employment on the latter date; and that in accordance with the terms of the master policy the coverage on insured then ceased, from which date he was allowed thirty-one days to convert the certificate into a policy of insurance, which he did not do.

The evidence further discloses that shortly after insured's death his divorced wife called at defendant's Youngstown Office, which did not handle group insurance policy claims, talked with some person whose name she did not know, and advised that person of insured's death; that in turn that

person advised her that she was in the wrong place, and she claims directed her to the Youngstown Office of the Republic Steel Corporation, where she talked with the superintendent of industrial relations and group insurance, who advised her that he desired to talk with the beneficiary; that in turn such employee talked with plaintiff beneficiary on June 24, 1942, and at that time the beneficiary "gave him the policy", at which time Republic Steel Corporation's employee advised him "we can't do anything about this, it is too late", and "made" him "understand that the insurance policy had lapsed"; that late in 1943 plaintiff's counsel talked with the supervisor of workmen's compensation and group insurance of the Republic Steel Corporation, at which time she surrendered to him the certificate issued to insured with proofs of insured's disability and death signed by his divorced wife, and was given a receipt therefor dated December 31, 1943; that the employee of Republic Steel Corporation sent all such papers to its Cleveland office on January 3, 1944, and that they were received by defendant at its New York Office on January 10, 1944, which papers furnished that office of defendant corporation with its first information of insured's death and claim under the certificate issued to him.

There is evidence that at the time insured was employed by Republic Steel Corporation and subsequent thereto defendant did not maintain an agency at the Youngstown office of Republic Steel Corporation; that the persons with whom the beneficiary, his counsel, and his mother talked at the Youngstown office of the Republic Steel Corporation were not employees of, paid or controlled in any manner by Metropolitan Life Insurance Company, and had no authority to waive the terms or conditions of insured's group insurance contract, or any of those relating to the proof of death of insured, and handled such claim as employees of Republic Steel Corporation.

There is no evidence that defendant knew, as claimed by plaintiff beneficiary, that insured was disabled between the date he last worked for Republic Steel Corporation and the date of his death, and the only evidence submitted to the jury on the question of insured's disability was the testimony of the plaintiff beneficiary, a layman who roomed in the same building as insured, and a physician who qualified as an expert and testified from the history sheet of the records of the hospital where insured died.

In response to the court's question, "the first of January up to June 12th did your Dad do any work?" the plaintiff

beneficiary testified he worked a little "maybe one or two days a week, maybe one or two days a month at the Republic."

The layman testified that "on January he stopped the work January or February", "about 1942, maybe '43 I don't know for sure, a long time ago", "he was weak, he was stay home all the time". "Yes, he was sick, weak, he can't work good, he was work before, but he worked two or three day and stay home again but '42 they knock him down, he can't work any more, he sit and lay down, go out sometime but at last it knock him down in bed, he was in bed about four or five days, no more, and then we sent him to the hospital; that is all I know".

In response to the question "was totally and continually disabled from doing any work" from the time he voluntarily left the employ of the Republic Steel Corporation on February 14, 1942, until he died on June 14, 1942, plaintiff's expert witness, over objection of defendant's counsel, testified that "well, I can only judge or estimate the fact that he died so quickly from a bronchial pneumonia that he must have been in a very run-down condition but I couldn't state as to how long; a man of his age (52-53) certainly could not have the proper nourishment and background to fight a disease like bronchial pneumonia and succumb to it—he must have been sick for quite a long time, that is the only thing I could tell you because I never saw the patient and don't know him and don't know his build-up but anybody that dies from a bronchial pneumonia, it is usually an end-disease from a debilitated state where the patient is so weak and non-resistant to invading bacteria or invading disease that they succumb to it".

Again in response to the hypothetical question "and assuming that the witnesses have said that the man was too weak to move about for at least 4 or 5 months prior to his death, would he have been able to perform any work?" plaintiff's expert medical witness answered "Oh, absolutely not, any man —this condition of bronchial pneumonia is a terminal death, it is a pleasure from God to get rid of a man that is old and debilitated because it is a non-painful death". In answer to the question "but assuming then that Mr. Hroblak had hardening of the arteries and in his weakened condition you would say that he was not able to perform any labor of any kind?", the court permitted that witness to give the following "answer in his own way", "I have to just go on the supposition and picture—I have had many of them—that these people get so as they get older and have worked hard and get the hardening of the arteries that their coordination is poor, their effort is slow, their heart can't furnish enough energy, they must have a preliminary notice at least of 6 months or a year and they

realize they cannot work and the fact that he died this way I could readily go on the premise that 3 months or more, whatever you stated, he certainly was in this condition; it isn't a matter of days or weeks, that he must have had this poor, sclerotic condition for at least 6 months".

On cross-examination the same witness testified "I am only going on the supposition that I picture to myself a man of his age to get bronchial pneumonia and die must have had a very poor body to fight infection and that badness and that debilitated condition of his body could not come on in a week, day or month, and it took months to come on, that is all I want to bring out"; and that every person becomes sclerotic to some extent after age forty; that he knew of a case of a two month old baby who had the arteries of an eighty year old man.

The trial judge permitted the plaintiff to introduce much testimony "under a general objection" and exception, which as stated by the trial judge "threw the burden on the court to interrupt all the time".

Counsel for defendant assigned fourteen grounds of error upon which he relied to secure a reversal of the judgment of the trial court, but contended by brief that "there is no evidence in the record that Republic was the agent of Metropolitan for any purposes"; that "plaintiff did not bring himself within the extended death benefit clause because he made no proof of disability; and that there was "error in refusal to give defendant's request to charge before argument". In oral argument before us defendant's counsel said that the sole question presented for our consideration and determination was "whether Republic was agent of Metropolitan Life Insurance Company for purpose of waiving proof of claim by disclaiming liability under its policy".

Plaintiff failed to furnish defendant's home office in writing notice and proof of deceased's alleged continual and total disability and death within ninety days thereafter as he was required to do by the provisions of the Extended Death Benefit Clause of the Master Insurance Policy, in order to come within such provisions, and unless defendant waived plaintiff's failure to comply therewith he is precluded from recovering in this case.

Plaintiff contends that defendant waived the stated provisions of such policy, and bottoms his contention upon his alleged, but denied, conversation with the superintendent of industrial relations and group insurance of the Republic Steel Corporation on July 24, 1942, to which reference has been made, which corporation and its employees

with whom plaintiff and his counsel allegedly talked plaintiff claims the evidence in this case discloses was defendant's agent for the purpose of waiving proof of claim.

Assuming but not determining, which viewing this case as we do we need not, that plaintiff's testimony, to which defendant's counsel objected, concerning the alleged, but denied, conversation of June 24, 1942, with the superintendent of industrial relations and group insurance of Republic Steel Corporation, defendant's alleged agent, was properly admitted in evidence, still his declaration to plaintiff made in the absence of defendant, the principal, which was not brought to the attention of or ratified by defendant, is not sufficient to establish or prove such agency.

"* * * 'It is true that an agent's authority cannot be shown by his own statements made out of court * * *. Wade v Whitsitt, supra, 9 Tenn. App. 436 pp. 446-449; Jones on Evidence (2 Ed., 1926) sections 944-945, pp. 1741-1749; Mechem on Agency (2 Ed.), sections 285 and 289.'" Tibbs v Equitable Life Assurance Society of United States, 172 S. W. 539 at 541.

The alleged statement of such person that insured allowed the master policy to lapse as far as his covereage thereunder was concerned did not waive on behalf of defendant the required provisions of the extended death benefit clause of the policy, for in addition to the provisions of such clause already stated that clause provides that "no agent is authorized to alter or amend this policy". A majority of the court concludes that the evidence in this case utterly fails to prove that either the employee of Republic Steel Corporation, to whom reference has been made, or that corporation were duly authorized to bind defendant in the premises. See 45 C. J. S. Article 1034.

Assuming further that Republic Steel Corporation was defendant's agent still that corporation, nor its named employee, could not waive on behalf of defendant insured's disability, a fact as disclosed by the evidence neither known by it nor by defendant before or sufficiently soon after insured's death to bring plaintiff within the provisions of such extended death benefit clause of the master policy.

Perhaps what I have said in this opinion thus far is sufficient to answer the "sole" question propounded by defendant's counsel by brief and argument, and I should proceed forthwith to announce the decision of the majority of this court,

which I believe is supported by the weight of authority, but which is contrary to the minority rule in some jurisdictions, which minority rule counsel for plaintiff urges this court to follow. However there is a line of cases which I am persuaded cover the question presented directly, reference to which should be made in this opinion.

The purpose of Republic Steel Corporation, apparent from reading the record submitted to us in this case, in procuring a group insurance policy for insured and his co-workers, taking their applications for such insurance, making premium payroll deductions therefor and paying them to defendant, and doing whatever served to obtain and keep such insurance in force, was to secure insurance for insured and his co-workers, if they desired it, at reduced cost and without physical examination; and in my opinion in so doing Republic Steel Corporation acted not as agent of defendant but acted as agent for insured and his insured co-workers and for their benefit, and acted for itself and its own benefit in promoting better industrial relations between itself and insured and his co-workers, and was "an arrangement instituted by the employer (Republic Steel Corporation) for the benefit of the employees", of which insured was one. See 44 C. J. S. page 800.

In the case of Duval v Metropolitan Life Insurance Company, 136 Atlantic 400 (N. H.), in which, as in this case, the master policy was kept by employer (Republic Steel Corporation), it is well said that "the whole scheme" of group insurance "is paternalistic" but "it does not have the effect of making the benevolent parent", (Republic Steel Corporation) "the agent of the party (the defendant) with whom he inaugurates a contract for the benefit of his children"; and that "the line dividing the three parties to the contract according to their interest and real position in these transactions puts the employer with the employee, as opposed to the insurer".

A careful perusal of the bill of exceptions submitted to us in this case in my opinion fails to disclose anything from which an implied general agency on the part of the Republic Steel Corporation to make representations or waive rights for defendant could be found.

In view of the statement of counsel for defendant concerning the sole question presented in this case perhaps it is unnecessary to dispose of the question of whether insured was disabled as defined in the extended death benefit clause of the master policy at any time subsequent to February 14, 1942. Notwithstanding that statement I proceed to dispose of that question.

Even though the testimony of lay witness Novak indicated that "the employee (insured) was from the date of termination of his employment to the date of his death, continuously and totally disabled, as the result of bodily injury or disease, so as to have been prevented from engaging in any and every business or occupation, and from performing any and all work for compensation or profit", as must be shown to bring insured within the provisions of the extended death benefit clause of the master policy of insurance under which he was covered, witness Novak's testimony, unsupported by competent medical evidence, has no probative value, and certainly is not sufficient on this issue, which "presented a field of scientific inquiry where expert medical testimony is required to furnish the answer". See **Drakulich v. Industrial Commission, 137 Oh St 82.**

This conclusion compels me forthwith to consider whether the testimony of plaintiff's expert medical witness, reference to some of which is made in the factual statement of this opinion, supported the testimony of witness Novak on the issue stated. Without referring to it further, except citation of one question, it is sufficient to say that much of the testimony of plaintiff's expert medical witness was given in response to hypothetical questions not based upon fact.

For instance, the hypothetical question to which reference has already been made "and assuming that the witnesses have said that the man was too weak to move about for at least 4 or 5 months prior to his death would he have been able to perform any work?" assumed a fact not in evidence. There is no evidence in the record submitted to us for review, which I can find, that insured was "too weak to move about for at least 4 or 5 months prior to his death". On the contrary, the testimony of plaintiff's lay witness Novak, and his own mother, is that insured was able to go to a doctor, to church, and to stand at the corner of Watt and Federal Streets in Youngstown, Ohio, on several occasions during the period named in the question; and the history sheet of insured's hospital record from which plaintiff's expert witness testified showed that he had been sick and had left his room only "3 or 4 days" before entering the hospital, and plaintiff beneficiary testified as to insured's ability to work during such period as heretofore stated herein.

Plaintiff's medical expert witness testified with admirable frankness, "no, I don't know why he (insured) quit working, I can only judge from the fact, as I told you, from bronchial pneumonia he died and he was somewhat sclerotic so I can draw the supposition", which was testimony tending to prove

a possibility and not a probability that insured's sclerosis, of which such witness likewise testified, caused his death, and which was "insufficient to prove causal connection between such "condition and death". See Drakulich v Industrial Commission, supra.

In my opinion the testimony of plaintiff's lay witness was not supported by the testimony of his medical expert witness.

Without further word, but as a result of an unusually careful study of the bill of exceptions submitted to us for review in this case, which was rather difficult to read, due to the manner in which the case was tried, as already stated, a majority of the court reaches the conclusion that plaintiff wholly failed to prove a waiver of the ninety day provision of the extended death benefit clause of the master policy of insurance, upon whom the burden of such proof rested, or to establish his right to recover from defendant in this case.

Accordingly a majority of the court believe that the trial judge should have sustained defendant's motion for a verdict directed in its favor at the conclusion of all the evidence, and failing to do so should have sustained defendant's motion for judgment in its favor notwithstanding the verdict of the jury against it, and in not sustaining such motions committed error prejudicial to defendant, as the result of which the judgment of the court of common pleas is contrary to law.

The defendant waived its right to have the trial judge direct a verdict in its favor at the close of plaintiff's case by introducing evidence in its own behalf. See **Halkias v Wilkoff Co., 141 Oh St 139.**

Reading the conclusion announced in this case, I believe, it is unnecessary to pass upon defendant's contention that the trial court erred in refusing "to give defendant's requests to charge before argument" to the jury, or in his general charge, or on any of the other of its assigned grounds of error.

It is obvious that the judgment of the court of common pleas must be and hereby is reversed, and now coming to render the judgment which that court should have entered final judgment is rendered for the defendant.

CARTER, PJ, Concurs in Judgment.
NICHOLS, J, Dissents.