KATHRYN L. BOWES v. LAKESIDE INDUSTRIES, INC., AND ANOTHER.

209 N. W. 2d 900.

August 3, 1973—No. 43961.

---

*Kempf & Ticen,* and *James D. Kempf,* for appellant.

*Gray, Plant, Mooty & Anderson, Richard A. Bowman,* and *James R. Lande,* for respondent Lakeside Industries.

*Cox & King* and *Leo G. Stern,* for respondent California Life.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Kathryn L. Bowes, widow of Hillford G. Bowes, claims entitlement to the face amount of a group life insurance policy written by defendant California Life Insurance Company (hereafter California Life) for the employees of defendant Lakeside Industries, Inc. (hereafter Lakeside), as master policyholder, asserting that Bowes was at the time of his death on December 18, 1969, a full-time employee of Lakeside. Alternatively, in the event her contractual claim against defendant California Life fails, she makes a claim for a like amount against defendant Lakeside, asserting fraud in the allegedly false representation of its personnel director that Bowes was entitled to policy coverage. The trial court ordered summary judgment against plaintiff, and she appeals. We affirm.

Plaintiff concedes that, based upon the affidavits and depositions before the court, the case was ripe for summary judgment. It is clear to us, as it was to the trial court, that Bowes was not an employee of Lakeside at the time of his death, much less a full-time employee. It is equally clear that Lakeside made no representations upon which he could reasonably rely that he was entitled to coverage.

Bowes was employed as Lakeside's salaried national sales manager during the period February 1, 1959, to December 31, 1965. During that period of time he participated in the company's group health and life insurance program and was covered by its workmen's compensation insurance. On February 17, 1966, he formed H. G. (Bill) Bowes & Associates, Inc. (hereafter Bowes corporation), to act as sales representative for some 19 toy manufacturers including Lakeside.

The Bowes corporation was located in the Bowes residence. Bowes served as its president, and his wife, Kathryn, acted as secretary and handled the office paperwork, together with their daughter, Helen, who was a part-time office employee. Michael Fadell, Jr., was employed by the Bowes corporation as a full-time salesman. All employees of the Bowes corporation were paid by checks drawn on the corporation's bank account. The corporation withheld Federal and state income taxes and made social security deductions for its employees. Bowes and Fadell, who divided sales responsibilities on a geographic basis, were reimbursed by the Bowes corporation for travel expenses. Lakeside, which had granted the Bowes corporation the exclusive right to sell its products in Minnesota and three surrounding states, paid the Bowes corporation a 5-percent commission without reimbursement for expense. The commissions paid by Lakeside up to the time of Bowes' death exceeded $70,000.

The group life insurance with California Life, issued to Lakeside, provided that "all full-time employees of Lakeside Industries, Inc. are eligible" for the coverages established. The evidence clearly compels a finding that Bowes was not such an eligible employee at the time of his death.

The contractual claim against California Life and the fraud claim against Lakeside are premised on a conversation between Bowes and Harold H. Segal, personnel director of Lakeside. Segal informed Bowes that his group insurance coverage would terminate at the end of the calendar month in which the change of employment status occurred. Bowes expressed the opinion

that, because he represented Lakeside in a designated sales area, he was "still with Lakeside" and said he wished to continue his insurance coverage. Segal agreed that he was still a "very close part of the organization" and that there would be no problem in continuing his coverage so long as he was willing to pay the full amount of the premiums. However, Segal stated to Bowes that there was a possibility that he might not have coverage— that if California Life should question his status there wasn't much that Lakeside could do. Lakeside thereafter continued Bowes' name on the list of employees submitted to California Life and remitted premiums deducted from commissions it owed the Bowes corporation.

Plaintiff contends that California Life had constituted Lakeside as its agent to administer the group life policy and is therefore bound by Lakeside's declaration that Bowes was eligible for coverage. We are aware of a developing trend, best exemplified by Elfstrom v. New York Life Ins. Co. 67 Cal. 2d 503, 63 Cal. Rptr. 35, 432 P. 2d 731 (1967), recognizing that group insurance policies may be employer-administered, as distinguished from insurer-administered, in which case the employer may be deemed to act as agent for the insurer.[1] The instant case, however, does not invite adoption or adaptation of the Elfstrom doctrine. The insurance policy considered in Elfstrom was deemed "employer-

---

[1] A majority of courts hold that the employer is the employee's agent, not the insurer's. See, generally, Duval v. Metropolitan Life Ins. Co. 82 N. H. 543, 136 A. 400 (1927); Boseman v. Connecticut General Life Ins. 301 U. S. 196, 57 S. Ct. 686, 81 L. ed. 1036 (1937); Northwestern Mutual Life Ins. Co. v. Black (Tex. Civ. App.) 383 S. W. 2d 806 (1964); Couch v. Connecticut General Life Ins. Co. (Fla. App.) 216 So. 2d 72 (1968); Phelps v. Elgin Academy, 125 Ill. App. 2d 364, 260 N. E. 2d 864 (1970). See, also, Engster, *Group Insurance: Agency Characterization of the Master Policy-Holder,* 46 Wash. L. Rev. 377 (1971). The minority view, expressed in Elfstrom v. New York Life Ins. Co. 67 Cal. 2d 503, 63 Cal. Rptr. 35, 432 P. 2d 731 (1967), is also represented by Clauson v. Prudential Ins. Co. 195 F. Supp. 72 (D. C. Mass. 1961), affirmed, 296 F. 2d 76 (1 Cir. 1961); and see, Note, Duke L. J. 824 (1968).

administered" because the insurer had delegated extensive duties to the employer, including enrolling employees, adding and deleting dependents, terminating and reinstating insurance, reporting details of coverage, indicating the amounts of premiums paid, issuing certificates of insurance, and determining eligibility for coverage. The California Life-Lakeside policy, as the trial court in effect found, was "insurer-administered" because Lakeside, the named "policyholder," had only the limited function of supplying data as to the persons within the insured group and remitting premiums for their coverage. Lakeside's records were subject to examination by the insurer, and all other records were maintained by the insurer.

The crucial determination made by the employer in Elfstrom was that an unquestioned employee was "full-time" within the meaning of the policy arrangements. The more basic question in the instant case was whether the so-called employee was an employee at all. Lakeside's action in undertaking to accommodate Bowes' desire for continuance of inexpensive group life insurance benefits was contrary to the plain terms of the policy and patently adverse to the interests of the insurer which the asserted agent is supposed to represent. Important to both the contractual claim against California Life and the fraud claim against Lakeside is the found fact that both Bowes and Segal of Lakeside understood, as well they should, that Bowes' insurable status was doubtful and that the insurer, not the insured, would ultimately make the determination.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.