## FRED G. NORBY, GUARDIAN AD LITEM OF LOWELL D. NORBY, v. BANKERS LIFE COMPANY OF DES MOINES, IOWA. HOFFMAN BROTHERS, INC., THIRD-PARTY DEFENDANT.

231 N. W. 2d 665.

July 11, 1975—No. 45036.

*Hulstrand, Anderson & Larson* and *Ronald C. Anderson,* for appellant.

*Ronald R. Frauenshuh,* for respondent.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

Important issues in the administration of group insurance programs for the benefit of employees are raised in this appeal.

The issues arise out of an uncomplicated factual situation. Hoffman Brothers, Inc. (hereafter Hoffman), third-party defendant, is a member of the Upper Midwest Employers Association. The association is named as policyholder in a group accident and sickness policy issued by The Bankers Life Company of Des Moines, Iowa (hereafter Bankers Life), defendant. The policy provides for reimbursement of a portion of the medical bills incurred by covered employees of the association's employer members, including dependents of employees. Plaintiff, Fred G. Norby, is an employee of Hoffman, and claims benefits for the expense of medical care for his injured child in the undisputed amount of $3,460.49.

Plaintiff commenced his employment with Hoffman in August 1970. He completed an application for coverage under the policy in September 1970, which was thereupon delivered to his employer, Hoffman. If Hoffman had transmitted the application to Bankers Life, plaintiff's insurance coverage would have begun immediately and his subsequent claim would have been paid. But,

through oversight or neglect, Hoffman failed to forward the application.

Plaintiff, on discovering Hoffman's error, completed a second application on December 31, 1970, which was promptly transmitted to Bankers Life. Because of an intervening period of temporary layoff, plaintiff's coverage, under the terms of the policy, was not effective until January 20, 1971—that is, unless the initial, untransmitted application was binding upon Bankers Life. Plaintiff's child, for whom the claim is made, was injured on January 19, 1971.

Bankers Life denied the claim, asserting that plaintiff was not effectively covered until it had received his application form from Hoffman. Plaintiff then brought this action on the policy against Bankers Life, which in turn instituted a third-party action against Hoffman for indemnity or contribution. The trial court ordered judgment for plaintiff, finding and concluding that Hoffman stood in the relationship of agent to Bankers Life with authority to accept the application, thus binding Bankers Life at the time of plaintiff's initial application. The court ordered the third-party complaint dismissed. This appeal followed, raising the primary issue of whether such an agency relationship existed and secondary issues concerning plaintiff's standing as a real party in interest and Bankers Life's claimed right of indemnity from Hoffman.

1. The threshold issue is whether, under the circumstances of this case, plaintiff is a real party in interest with standing to assert this claim. Hoffman, after Bankers Life denied plaintiff's claim, paid plaintiff the amount he would have received under the policy had he been covered. Whether plaintiff will actually repay that sum to Hoffman if the judgment in this action is affirmed is not known, but it is known that neither plaintiff nor Hoffman considers that plaintiff is under any obligation to do so. Bankers Life contends that because plaintiff has suf-

fered no loss, Hoffman is the real party in interest to litigate the issue of liability.[1] We hold otherwise.

The posture of this action is fully sustained by the provisions of Rule 17.01, Rules of Civil Procedure:

"Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

Hoffman, sued as a third-party defendant by Banker's Life, has stated that its interests are not adverse to plaintiff's, a statement confirmed by the fact that both are represented by the same counsel.[2] By this conduct, Hoffman has effectively ratified plaintiff's action within the meaning of Rule 17.01.

The purpose of this rule is to save a defendant against whom a judgment may be obtained from further demands by other claimants for the same relief. If that purpose is satisfied, the requirements of the rule are satisfied. Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. 2d 807 (1950). As a result

---

[1] Defendant, Bankers Life, contends additionally that, because the group insurance policy was written in the name of Upper Midwest Employers Association, the association alone has standing. It is elementary, however, that an employee who otherwise satisfies the conditions of a group plan may maintain an action against the insurer as a third-party beneficiary. See, 2 Williston, Contracts (3 ed.) § 369; 4 Corbin, Contracts, § 807. See also, Bass v. John Hancock Mutual Life Ins. Co. 10 Cal. 3d 792, 112 Cal. Rptr. 195, 518 P. 2d 1147 (1974).

[2] Defendant, Bankers Life, first raised the question of real party in interest by moving to amend its answer so as to include such a defense. Hoffman then stated that if defendant's motion was granted, Hoffman would move to join plaintiff in asserting a claim to the proceeds of the policy. The trial court denied defendant's motion.

of Hoffman's ratification of plaintiff's suit, defendant-insurer is protected from duplicate judgments; thus, the ultimate question of defendant's liability may be conclusively determined.

2. The principal issue for determination is whether an employer may be held to be acting as an agent of a group insurer for the purpose of accepting insurance applications from eligible employees. If, as the trial court here found, Hoffman acted as the agent of Bankers Life with respect to plaintiff's timely initial application, Bankers Life is bound by Hoffman's action, since a principal is bound by the acts of its agent. Blumberg v. Taggart, 213 Minn. 39, 5 N. W. 2d 388 (1942); Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. 2d 28 (1943); Restatement, Agency 2d, § 144. We hold that it was.

Conventional wisdom has been that the employer functions in the administration of a group insurance policy solely for its own interests or for the benefit of its employees, rather than serving the purposes of the insurer, and that the employer and the employees are allied in their interests adverse to the insurer. Judicial precedent, including the older precedents, are numerically weighted against finding the existence of an employer-insurer agency relationship.[3]

Pragmatic, as well as theoretical, considerations induce us to undertake, as others have, a reappraisal of these concepts.[4]

---

[3] See, e.g., Boseman v. Connecticut General Life Ins. Co. 301 U. S. 196, 57 S. Ct. 686, 81 L. ed. 1036 (1937); Metropolitan Life Ins. Co. v. Quilty, 92 F. 2d 829 (7 Cir. 1937); Leach v. Metropolitan Life Ins. Co. 124 Kan. 584, 261 P. 603 (1927); Equitable Life Assur. Society v. Hall, 253 Ky. 450, 69 S. W. 2d 977 (1934); Duval v. Metropolitan Life Ins. Co. 82 N. H. 543, 136 A. 400, 50 A. L. R. 1276 (1927); Kloidt v. Metropolitan Life Ins. Co. 18 N. J. Misc. 661, 16 A. 2d 274 (1939); Hroblak v. Metropolitan Life Ins. Co. 50 Ohio L. Abs. 395, 79 N. E. 2d 360 (Ohio App. 1947); McFadden v. Equitable Life Assur. Society, 351 Pa. 570, 41 A. 2d 624 (1945); Palmer v. Newport Trust Co. 245 A. 2d 438 (Maine, 1968).

[4] Discussion of the issue may be found in Note, 1968 Duke L. J. 824; Eugster, *Group Insurance: Agency Characterization of the Master Policyholder*, 46 Wash. L. Rev. 377; 1 Appleman, Insurance Law and Practice, § 43.

Group insurance is today a widespread and most significant form of insurance protection, particularly for employee groups, as shown by data published by the Institute of Life Insurance, Life Insurance Fact Book (1974). Group life insurance coverage amounted to over 708 billion dollars in 1973, which is nearly 40 percent of all life insurance in force in this country. Over 86 percent of group life insurance is of the employer-employee type. It may not be an impermissible assumption that data for the general category of health insurance in the private sector of the economy would parallel those for life insurance.

The growth of group insurance in labor-management situations undoubtedly relates to the advantages inherent in it. The advantage to the employee is that it permits insured protection, generally without necessity of physical examination, at little or no cost. The advantage to the employer is that it is able, at moderate cost, to satisfy the felt needs of its employees, thereby reducing the labor unrest or turnover that impairs productivity. The advantage to insurers is that the mass sale and administration of group insurance involves a low rate of lapse and low per capita expense of administration, the efficiency and economy of which are profitable to the insurer.

Administration of group insurance policies entails some rather routine functions, such as enrolling employees through their completing applications for themselves and dependents; collecting employee contributions, if any, and remitting premiums to the insurer; terminating and reinstating insurance; and assisting in the processing of claims. Employers may have a role in determining eligibility for coverage, at least to the extent that the classification and employment status of employees relates to whether or not an employee is within the insured group. There may be situations where the insurer performs all these functions itself, in which case the plan is wholly "insurer-administered," and in which case no issue of agency between the employer and insurer arises. There are the other situations, as in this case, in which the employer performs such a number of these functions

that, at least as a shorthand expression, it may be considered, in whole or in part, to be "employer-administered." To the extent the employer, with the consent of the insurer, performs the functions of the insurer, it may properly be considered the insurer's agent.

An agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control. Restatement, Agency 2d, § 1. These aspects of the relationship in employer-sponsored insurance plans should be realistically viewed from the various perspectives of the insurer, the employer, and the employee. The insurer has an obvious choice as to whether or not to authorize the performance of administrative functions by the employer and, if it does so, is in a position to exercise effective control over the performance of those functions; the employer, likewise, has a choice of whether or not to purchase an insurance policy under those conditions, recognizing that the choice may have an effect upon the premium it pays. The employee-beneficiary, however, ordinarily has no choice with respect to the policy purchased or the manner of its implementation. He usually knows only that he is entitled to stated insurance benefits. He does not ask whether the insurance plan is "insurer-administered" or "employer-administered." He may reasonably assume that his employer and the insurer will, in their dealings with each other, do that which is necessary to provide him with the promised benefits. It is, therefore, unreasonable and inequitable to frustrate the employee's expectations because of an employer's negligence in administering the insurance agreement.

This is substantially the rationale of that minority of the courts which hold that the employer, in circumstances similar to these, acts as the agent of the insurer. This view was most thoroughly articulated in Elfstrom v. New York Life Ins. Co. 67 Cal. 2d 503, 63 Cal. Rptr. 35, 432 P. 2d 731 (1967).[5] An ab-

---

[5] Authorities in accord, as cited in Elfstrom v. New York Life Ins. Co. 67 Cal. 2d 503, 511, 63 Cal. Rptr. 35, 41, 432 P. 2d 731, 737 (1967), are Clauson v. Prudential Ins. Co. of America, 195 F. Supp. 72 (D. Mass.), af-

breviated version of the facts in Elfstrom will serve to indicate some similarities in that case to the case at bar. There, the insurer of an employer's group insurance policy delegated to the employer the function of enrolling employees, adding and deleting dependents, terminating and reinstating insurance, reporting details of coverage, indicating the amounts of premiums paid, determining eligibility matters, and issuing certificates of insurance. The insurer provided the employer with an instruction manual for determining eligibility matters, and the insurer's group representative was available for consultation. The group representative made an annual review of the employer's records. Here, as the trial court found, the employer was to take applications of employees on forms supplied by the insurer and to forward them directly to the insurance company, with no intermediaries and with no agents of the insurer calling upon the employer for the purpose of taking such applications. The employee had no contact with the defendant insurer. The employer processed the insurance applications and paid for all premiums.

We decide today what we did not decide in Bowes v. Lakeside Industries, Inc. 297 Minn. 86, 209 N. W. 2d 900 (1973). We there said (297 Minn. 89, 209 N. W. 2d 901) :

"* * * We are aware of a developing trend, best exemplified by Elfstrom v. New York Life Ins. Co. [*supra*], recognizing that group insurance policies may be employer-administered, as distinguished from insurer-administered, in which case the employer may be deemed to act as agent for the insurer. The instant case, however, does not invite adoption or adaptation of the Elfstrom doctrine. * * *

"* * * Lakeside's action in undertaking to accommodate Bowes' desire for continuance of inexpensive group life insurance

---

firmed, 296 F. 2d 76 (1 Cir. 1961); Piedmont Southern Life Ins. Co. v. Gunter, 108 Ga. App. 236, 132 S. E. 2d 527 (1963); Neider v. Continental Assur. Co. 213 La. 621, 35 So. 2d 237, 2 A. L. R. 2d 846 (1948); Baum v. Massachusetts Mutual Life Ins. Co. 357 P. 2d 960 (Okla. 1960); Coker v. Aetna Life Ins. Co. 188 S. C. 472, 199 S. E. 694 (1938).

benefits was contrary to the plain terms of the policy and patently adverse to the interests of the insurer which the asserted agent is supposed to represent."

We now hold that the employer policyholder may, in appropriate circumstances, be found to be the agent of the group insurer of employees and affirm the trial court's finding that third-party defendant, Hoffman, was in this case the agent of defendant, Bankers Life.

We do not undertake to anticipate what may constitute appropriate circumstances to support a finding of agency in any future case, except to make two clarifying points about our reliance on Elfstrom and our commentary on it in Bowes. First, the use of the terms, "employer-administered" and "insurer-administered" is not necessarily of determinative significance, for it would seem that few insurance plans for employee groups are likely to be wholly one or the other. The focus, instead, should be on which specific and relevant administrative functions are performed by the employer on behalf of the insurer, with respect to the particular ground asserted for noncoverage or nonpayment under the policy. Sadtler v. John Hancock Mutual Life Ins. Co. 291 A. 2d 500 (D. C. Ct. App. 1972). An employer may be considered an agent of an insurer for some purposes but not for others. Here, the employee was plainly eligible for coverage but was denied coverage only because the function of enrollment, clearly delegated to the employer by the insurer, was mishandled. The delegated act was specifically relevant to the particular ground upon which the insurer denied coverage. Whether the insurance plan was or was not "employer-administered" in other respects, is, in this situation, of little relevance.[6] That is, in es-

---

[6] It bears underscoring that we have at all times confined this opinion to employer-employee insurance plans. Whether it may have application to other group insurance plans would, in any case, require an assessment of the way in which a group plan is set up and operated and the character and relationship of the parties to the plan.

sence, the basis upon which the trial court made its finding and is the basis upon which it is affirmed.

Second, we take anticipatory note of the danger of collusion between an employer and employee to defeat the insurer for each other's benefit. Circumstances tending to show collusion were apparent in both Elfstrom and Bowes, but were neither alleged nor apparent in this case. Those courts which have rejected a finding of agency have done so on the assumption that the interests of both the employer and employee are adverse to the insurer. Although we depart from those precedents, we agree that whenever it is established that the employer and employee have colluded adversely to the insurer, no agency may be found to exist. Any authority of an agent clearly terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a breach of loyalty to the principal. A principal is not bound by an agent's actions where the agent acts adversely to the principal and the party with whom the agent deals is aware of such adverse dealing. Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. 2d 273 (1959); Restatement, Agency 2d, §§ 112, 165.

3. We conclude with a brief consideration of Bankers Life's contention that, notwithstanding this determination of an agency relationship binding upon it, it is entitled to indemnity from Hoffman under the principle that one who is liable only because of a duty imposed by law for the consequences of another's negligence may recover from that other person. Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. 2d 355 (1954); N. P. Ry. Co. v. Minnesota Transfer Ry. Co. 219 Minn. 8, 16 N. W. 2d 894 (1944).

We think our decision in Julien v. Spring Lake Park Agency, Inc. 283 Minn. 101, 166 N. W. 2d 355, 35 A. L. R. 3d 815 (1969), is dispositive of this contention. There, an insurance agent neglected to notify an insurance company of the issuance of a temporary oral binder upon a building under construction. We held that the agent was not liable to the insurer for a loss paid out under the binder upon the destruction of the insured prop-

erty. It was there undisputed that the policy would have been written had the information been promptly transmitted, no investigation being necessary before the acceptance of an oral binder. We concluded that, since the insurer was not prejudiced by the agent's failure to advise it of the risk incurred, the insurer could not recover from the negligent agent.

Here, as in Julien, no harm has resulted to the insurer by reason of the negligent failure of Hoffman to promptly send in plaintiff's application. Here, as there, it is undisputed that plaintiff would have been covered with respect to this claim if only Hoffman had transmitted the completed application form when first submitted by plaintiff. Thus, defendant suffered no loss in payment of the reimbursable medical expenses as provided in the insurance policy.[7]

Affirmed.

---

[7] It is true that Bankers Life was damaged to the extent that it was not paid premiums for the short period prior to plaintiff's actual enrollment. No evidence was offered as to the amount of those unpaid premiums, however, so the trial court properly denied recovery and dismissed the third-party complaint. We trust, nevertheless, that Hoffman will not be unwilling, as a matter of commercial courtesy, to pay the modest amount of premiums earned and unpaid upon request of Bankers Life.