Leigh A. HEDLUND, Appellant,

v.

MONUMENTAL GENERAL INSURANCE COMPANY, et al., First Bank System, Inc., Respondents.

No. C4-86-2136.

Court of Appeals of Minnesota.

April 28, 1987.

Phillip J. Martini, Wertz Law Office, Minneapolis, for Leigh A. Hedlund.

Robert S. Cragg, Cragg & Bailly, Ltd., Minneapolis, for Monumental General Insurance Company, et al.

Richard P. Wright, Bloomington, for First Bank System, Inc.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Leigh Hedlund sued her insurance company and offering bank when the insurance company refused to pay a claim under an accidental death policy Hedlund had taken out on her live-in boyfriend, Roger Lewis, naming him as her "spouse." The trial court granted summary judgment for the defendants on the ground that Lewis was not eligible for coverage, and Hedlund appeals. We affirm.

## FACTS

Leigh Hedlund lived with Roger Lewis for five years. Although she used his name for some purposes, they never married.

In February 1984 Hedlund received a mailing from First Bank Systems in Minneapolis, where she held a savings account under the name Leigh Lewis. This mailing included a letter offering a group accidental death insurance plan to "eligible Savings Accountholders." Also included was a page entitled, "Provisions of Coverage." In a paragraph entitled "Eligibility," it stated:

> All First Bank Savings Accountholders under age 85 with accounts in good standing are eligible to apply for $1,000.00 of no-cost coverage and optional additional protection. *Spouses* of Accountholders are eligible to apply for optional protection only.

(Emphasis added). The word "spouse" appeared three more times on the page.

Within the application deadline period, Hedlund sent in an enrollment form requesting $50,000 worth of coverage on herself and $50,000 on Roger Lewis. After his name, in the blank labeled "relationship," she wrote "spouse."

The policy was effective May 1, 1984. Three days later, Hedlund's son shot and killed Roger Lewis during an argument. After Lewis' death, Hedlund received the certificate of insurance, which stated that "the Member named to whom this certificate is issued and his eligible dependents, if any, for whom coverage has been requested and the applicable premiums paid * * * are insured * * *."

Calling herself Lewis' wife, Hedlund filed a claim for the proceeds of the insurance policy. She attached a copy of Lewis' death certificate, which stated that he had never married. When the insurance company learned this fact, they refused to pay the claim. In November 1985 Hedlund filed suit against the insurer and the bank to receive the proceeds of the insurance policy.

The defendants subsequently moved twice for summary judgment. The first motion was denied because the trial court saw the issue to be whether Hedlund's misrepresentation had increased the risk to the insurer. The second motion was granted on the ground that the issue was not

whether the risk of loss was increased, but whether Lewis was eligible for coverage. The trial court ruled that summary judgment was appropriate because Lewis, never having married Hedlund, was not her spouse and therefore was not eligible.

## ISSUES

1. Did the trial court correctly apply the law when it held that the threshold issue was whether Lewis was eligible for coverage?

2. Did the trial court correctly rule that Lewis was not eligible for coverage because he was not married to Hedlund?

## DISCUSSION

### I

■ Hedlund contends the trial court erred in ruling that the threshold issue was Lewis' eligibility. She contends the issue was whether her misrepresentation increased the insurer's risk. We agree with the trial court that eligibility is the threshold issue in the context of a group insurance policy. The trial court based its ruling on *Bowes v. Lakeside Industries, Inc.,* 297 Minn. 86, 209 N.W.2d 900 (1973), which dealt with the issue of eligibility under a group policy. *Bowes* did not hold that eligibility was a *threshold* issue, as there were no competing issues; however, the law is clear.

"In a group policy, one's status as an eligible member of the group is the exact basis on which [the] company offers the policy; one must come within the definition of a member of the group to qualify for coverage." 1 Appleman, *Insurance Law and Practice,* § 44 (1981).

Quoting this language, the Wisconsin Supreme Court decided a similar case in *Spitz v. Continental Casualty Co.,* 40 Wis.2d 439, 162 N.W.2d 1 (1968). There the plaintiff, a doctor, applied for coverage under a group policy offered to eligible members of the American Medical Association. An eligible member was defined, in part, as one who was "actively performing the full-time duties of his occupation." The doctor was disabled with multiple sclerosis at the time

he applied. The trial court saw the issue to be whether the plaintiff's misrepresentation had increased the insurer's risk. *Id.* at 443 n. 3, 162 N.W.2d at 3 n. 3. The supreme court disagreed, stating:

> The requirement of eligibility is the threshold that must be crossed before we reach the question of representations, misrepresentations or possible fraud. In a group policy one's status as an eligible member of the group is the exact basis on which the company offers the policy. One must come within the definition of a member of the group to qualify for coverage. While a misrepresentation as to eligibility for coverage might also increase the risk or contribute to the loss, it is under a group policy something more than a mere statement relating to insurability. It is a certification to status as one eligible to coverage as a member of the group involved.

*Id.* 162 N.W.2d at 3; *see also Crawford v. Equitable Life Assurance Society of U.S.,* 56 Ill.2d 41, 305 N.E.2d 144 (1973) (the fact of eligibility is decisive).

### II

■ Hedlund contends the trial court erred in ruling that Lewis was ineligible because he had never married her. We disagree. Minnesota law sets forth the requirements of group insurance:

> Group accident and health insurance is hereby declared to be that form of accident and health insurance covering not less than * * * ten members, and which may include the * * * member's dependents, consisting of husband, wife, children, and actual dependents residing in the household * * *.

Minn.Stat. § 62A.10, subd. 1 (1986). In this case the enrollment form narrowed eligibility further, to members and their spouses. Hedlund admits she read this form as well as the coverage provisions which contained the same language.

Hedlund objects that the insurer did not define "spouse." However, "spouse" is commonly known to mean husband or wife. "The legal, as well as the ordinary, meaning of 'spouse' is one's wife or husband."

*In Re Trust of Atwood,* 262 Minn. 193, 198, 114 N.W.2d 284, 288 (1962); *see also Webster's New Universal Unabridged Dictionary* at 1758 (2nd Ed.1983) ("a husband or wife; either member of a married couple spoken of in relation to the other").

We realize that unmarried couples are increasingly cohabiting and that many of these relationships are permanent and analogous to marital relationships. But they are not spousal relationships within the meaning of Minnesota law. Although Minnesota historically recognized common law marriage, it has been specifically abolished by the legislature. *See* Minn.Stat. § 517.01 (1986). We cannot ignore that pronouncement.

The trial court properly granted summary judgment on the ground that eligibility is the threshold issue in the context of a group insurance contract and that Roger Lewis was not eligible because, as a matter of law, he was not Hedlund's spouse.

In view of our holding, we do not reach the issue of Hedlund's reasonable expectations.

### DECISION

Affirmed.