186 F.3d 1184 (9th Cir. 1999)
 MARY GOLT, Individually and as Guardian for Anthony Golt and William Golt, minors, Plaintiff-Appellant,
v.
AETNA LIFE INSURANCE COMPANY; GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendants-Appellees.
 No. 98-35034
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted July 15, 1999
Submission Vacated August 4, 1999
Decided August 10, 1999
 
 Appeal from the United States District Court for the District of Montana Paul G. Hatfield, District Judge, Presiding. D.C. No. CV-96-00034-PGH.
 Before: Thomas M. Reavley,[1] Arthur L. Alarcon and M. Margaret McKeown, Circuit Judges.
 ORDER
 McKeown, Circuit Judges.
 
 
 1
 * Pursuant to Rule 44(c) of the Montana Rules of Appellate Procedure, we respectfully request the Montana Supreme Court to exercise its discretion to adjudicate the following questions of Montana law:
 
 
 2
 1. Does accidental death coverage, when provided either as part of a separate group accident insurance policy, or as part of a "Group Life and Accident and Health Insurance Policy," fall within Montana's statutory definition of life insurance for the purpose of determining an insured's conversion rights? See MCA SS 33-1207 (definition of life insurance), 33-20-1209 (conversion rights), 33-20-1211 (effect of death during conversion period).
 
 
 3
 2. Does accidental death coverage provided pursuant to a group accident insurance policy remain in effect, if the policy contains a provision granting the insured the right to a 31 day grace period in which the group policy can be converted to an individual policy, but where the insured dies before the expiration of the grace period without exercising the right to convert the policy?
 
 
 4
 3. If your Court determines that there is accidental death coverage in a group policy in either of the above situations, in a case where the policy provides that the insured or the employer must submit notice of claims to the insurer "or any authorized insurance agent of the Insurer," does the delivery of a notice of a claim to the insured's employer constitute notice to the insurer, on the basis that the insured's employer is an agent of the insurance company for the purpose of submitting a claim?
 
 
 5
 The answers to the certified questions will be determinative of the appeal pending in our court in this diversity action. We acknowledge that your Court may decide to reformulate the questions, and that our phrasing of the questions is not intended to restrict your Court's consideration of this request. We would be grateful for any guidance your Court can give us, whether or not directly responsive to the questions as we have phrased them.
 
 II
 
 6
 In this diversity action, Mary E. Golt ("Mrs. Golt") has appealed from the final judgment entered following the grant of the motions of General American Life Insurance Co. ("General American") and Aetna Life Insurance Co. ("Aetna") (collectively the "Insurers") for a summary judgment in Mrs. Golt's action to recover accidental death benefits for the death of her husband, John C. Golt, III ("Mr. Golt").
 
 
 7
 Mr. Golt worked as a civilian employee of the Army & Air Force Exchange Service ("AAFES") at Malmstrom Air Force Base from August 21, 1978 through January 26, 1994 when he was discharged from his employment for cause. On February 25, 1994, 30 days after the termination of his employment, Mr. Golt died of carbon monoxide poisoning.
 
 
 8
 As a benefit of his employment, Mr. Golt was covered by an "accident insurance policy" issued by General American. The policy provides that if an eligible employee dies of an accidental cause while covered by the General American policy, his or her estate is eligible to receive $200,000. The policy further provides that coverage will terminate on the first premium due date after the insured ceases to be an employee. Mr. Golt ceased to be an employee on January 26, 1994, the date his employment was terminated for cause. The next premium due date following January 26, 1994 was February 1, 1994. The General American policy also provides that the group accident insurance policy can be converted to an individual policy within 31 days of the employee's discharge if written application is made and if the first premium is paid.[2] If a loss is suffered, written notice of any claim must be provided to General American or its agents within 20 days, and proof of loss must be provided within 90 days.
 
 
 9
 In addition, as an employee of AAFES, Mr. Golt was insured by Aetna in a policy styled as a "Group Life and Accident and Health Insurance Policy." The policy provides that "[t]his plan will pay as a Life Insurance benefit the amount of Life Insurance in force if you die from any cause while insured." The Aetna policy provides for life insurance benefits in the amount of $32,000 for Mr. Golt. The policy also provides for "Accidental Death and Dismemberment Coverage" ("AD&D") in a separate portion of the group policy for "bodily injury caused by an accident and if, within 90 days after the accident, you lose, as a direct result of the injury, Your Life . . . ." The policy provides an additional accidental death benefit in the amount of $32,000 in the event of Mr. Golt's accidental death.
 
 
 10
 The Aetna policy further provides that the group life insurance can be converted to individual life insurance within 31 days of an employee's discharge, and that, if the employee dies during this period, benefits are payable. The Aetna policy provides that an insured must "[r]eport an illness or injury to the AAFES as soon as you can." The Aetna policy also provides that "[c]overage under this Plan" ceases when an employee is discharged. It does not provide for any conversion privilege within the description of the AD&D coverage.
 
 
 11
 On March 9, 1994, Mrs. Golt forwarded her insurance claims against General American and Aetna to Barbara Crutchfield ("Crutchfield"), the AAFES personnel supervisor. Crutchfield informed Mrs. Golt that her claims would be promptly transmitted to the AAFES headquarters in Texas and from there to both insurance companies.
 
 
 12
 The claims were transmitted to the AAFES headquarters, and to Aetna, but not to General American. Aetna paid the $32,000 benefit due under the life insurance provisions of the policy but denied the claim for accidental death benefits on the ground that this coverage ended when Mr. Golt's employment was terminated.
 
 
 13
 On March 30, 1994, Crutchfield sent a letter to Mrs. Golt stating that AAFES had submitted Mrs. Golt's claims to General American and Aetna. She also informed Mrs. Golt that her husband wasnot covered under either General American's accident insurance policy or Aetna's AD&D coverage. Crutchfield did not learn until two and one-half years later that AAFES did not forward Mrs. Golt's claim to General American.
 
 
 14
 The General American accident insurance policy provides in a paragraph labeled "Notice of Claim" that written notice of claims must be sent "within 20 days after a covered loss occurs" to the National Accident Insurance Underwriters, Inc. ("NAIU"), "or to one of our agents." On a subsequent page under a paragraph labeled "Notice" the policy provides that "you [the insured] or the Policyholder[AAFES] submit notice of claims" to the NAIU or to "any authorized insurance agent of the Insurer." In a letter dated December 15, 1995, the NAIU informed Mrs. Golt that no accidental death benefit would be payable on the General American accident insurance policy.
 
 
 15
 Mrs. Golt commenced this action on March 25, 1996, seeking recovery for $32,000 in accidental death benefits under the Aetna "Group Life and Accident and Health Insurance Policy," and $200,000 in accidental death benefits under the General American accident insurance policy, plus prejudgment interest. All parties moved for summary judgment. The district court concluded that there was no coverage under either policy and entered final judgment in favor of the Insurers. Mrs. Golt timely appealed. Before our court, Mrs. Golt contends that the district court erred in concluding that, under Montana law, the accidental death coverage provided by each insurer was not required to include a 31 day grace period. Mrs. Golt argues that under Montana law, the death of an insured must be considered an election to convert where an insured has died during the conversion period of a group accident policy but has not exercised the conversion right. Mrs. Golt maintains that delivery of notice to the AAFES of the claim for accidental death benefits constituted notice to an agent of General American.
 
 III
 
 16
 The parties disagree regarding whether the accidental death coverages at issue were life insurance policies under Montana law for the purpose of determining Mr. Golt's conversion rights. Montana law specifically defines "life insurance"[3] and "disability insurance."[4] Montana law also states that different classes of insurance may overlap. See MCAS 33-1-205.[5] In addition, Montana law specifies minimum conversion rights that each type of insurance is required to include. Group life insurance policies must provide coverage to the insured for a 31 day grace period following the termination of the insured's group coverage. See MCA S 33-20-1209[6] & MCA S 33-20 1211.[7] By contrast, group disability insurance policies need only extend hospital or medical insurance if application is made and the first premium is tendered. See MCA S 33-22-508.[8] If the accidental death benefits provided by the Insurers are construed as life insurance under Montana law, Mr. Golt was insured on the date of his death.
 
 
 17
 The district court concluded that the statutory definitions show that "the legislature of Montana has chosen to include what traditionally has been referred to as `accidental death' insurance within the purview of the `disability' insurance provisions of the Montana Insurance Code." We have found no Montana case law that resolves the question whether under the Montana Insurance Code, accidental death coverage should be governed by the conversion provisions required for life insurance.
 
 IV
 
 18
 General American and Mrs. Golt also disagree regarding the effects of Mr. Golt's death prior to the expiration of the 31 day conversion period provided in the contract. General American's accident insurance policy and certificate of insurance state that the conversion privilege can be exercised only by "(a) making written application therefor within 31 days of [the] termination of insurance; and (b) by paying the first premium applicable . . . ." If converted, the "converted policy shall take effect on the date of such termination of insurance or on the date of application for the converted policy, whichever is later."
 
 
 19
 There is authority for the proposition "that a group insurance policy, which contained a provision terminating the insurance upon the termination of the employment of insured, and a further provision granting to the insured a thirty-one days grace period during which he could convert the policy into some other type of policy, remained in full force and effect as to such insured during the thirty-one days reconversion period." Atlas Life Ins. Co. of Tulsa v Miles, 161 P.2d 1022, 1023 (Okla. 1945). See also 1 Couch on Insurance S 8:72 (3d ed. 1995) ("When the employee incurs a covered loss, most commonly death, during the period allowed to elect conversion but without an election having been made, the insured has usually been deemed to have elected coverage, and the insurer required to pay benefits.").
 
 
 20
 Most authority, however, is to the contrary. See e.g. Life Ins. Co. of N. Am. v. Klingler, 730 S.W.2d 32, 34 (Tex. App. 1987) ("Texas case law, as well as overwhelming authority from other jurisdictions, clearly dictates . . .[that] the thirtyone day grace period merely provides an insured with the option to `convert' or acquire an individual insurance policy.") (citations omitted); Eric H. Miller, Annotation, Group Insurance: Construction, Application, and Effect of Policy Provision Extending Conversion Privilege to Employee After Termination of Employment, 32 A.L.R.4th 1037, 1984 WL 263396 (1984) S 3(b) (1981) (listing cases from nineteen states which reached the conclusion that "the presence in a group insurance policy of a provision permitting an employee to obtain an individual policy, if application and payment of the premium for such policy are made within a specified period following the termination of the employee's coverage under the group policy, did not operate to continue the group policy in force during such period, where the policy provided that an employee's coverage thereunder terminated on . . . a fixed date following such termination"); 1 J. Appleman & J. Appleman, Insurance Law & Practice S 126 (1981) ("It is absolutely necessary, however, that the employee act within [the conversion] period. Of itself, it does not act as a period of extended insurance, or grace period, and death during that period, without positive action upon [the insured's] part, will not bring a new policy into force and effect nor extend the old, unless otherwise provided by contract or by statute.") (footnotes omitted).
 
 
 21
 We have found no Montana court decisions which resolve this question regarding the effect of the death of the insured during a conversion period. A declaration by your Court on this question would guide us in resolving the parties' dispute.
 
 V
 
 22
 If your Court determines that an insured is covered under these circumstances, there is another issue unresolved under Montana law that must be addressed by us. The General American policy provides that written notice of claim must be given to General American or one of its agents within 20 days of the covered loss, and proof of loss within 90 days. It is undisputed that Mrs. Golt delivered all relevant claim documents to the AAFES, Mr. Golt's employer, on March 9, 1994, twelve days after his death. It is also undisputed that Mrs. Golt was informed by the AAFES that the documents had been forwarded to General American. General American did not receive the claim. The record shows that AAFES routinely transmits employees' claims to General American.
 
 
 23
 The parties disagree regarding whether an employer acts as an insurance company's agent for the purpose of receiving claims from an employee covered by a group insurance policy. Our research has not disclosed any Montana case that resolves this question. Perhaps the closest case is Nautilus Ins. Co. v. First Nat'l Ins. Co., 837 P.2d 409 (Mont. 1992), in which your Court stated that an "insurance broker is usually regarded as the agent of the insured" and that "the determination of which party a broker is acting for as to a particular matter depends on which party requested him to do the particular thing." Id. at 411-12. There is case law from some jurisdictions which supports the position that an employer acts as an agent for an insurance company that has issued a group policy covering employees. See Norby v. Bankers Life Co., 231 N.W.2d 665, 669 (Minn. 1975) (holding that the employer may be considered the insurer's agent where the employer with the consent of the insurer performs routine administrative functions such as assisting in the processing of claims); Bass v. John Hancock Mut. Life Ins. Co. , 518 P.2d 1147, 1150 (Cal. 1974) ("[W]e have held that the employer is the agent of the insurer in performing the duties of administering group insurance policies, including the payment of premiums, and that accordingly the insurer shares responsibility for the employer's mistakes.").
 
 
 24
 There is also case law from other jurisdictions which holds that an employer does not act as the agent of an insurance company that has issued a group policy. See Hayes v. Lincoln Gen. Ins. Co., 899 F.2d 684, 686 (7th Cir. 1990) ("According to Indiana law, when an employer acts as the middleman between an insurance company and its employees, the employer is the agent of the employees, not the insurance carrier."). These two approaches to the characterization of the employer have been described respectively as the minority and majority rules. See Bowes v. Lakeside Industries, Inc., 209 N.W.2d 900, 902 n.1 (Minn. 1973) (holding that the employer was not the insurer's agent). See generally Comment, Group Insurance: Agency Characterization of the Master Policy-holder, 46 Wash. L. Rev. 377 (1971).
 
 
 25
 Your acceptance of our request for certification of this question will also be of great assistance in correctly applying Montana law.
 
 VI
 
 26
 The clerk of this court shall forward a copy of this order, under official seal, to the Montana Supreme Court, along with copies of all briefs and excerpts of record that have been filed with this court. The parties shall notify the clerk of this court within 14 days of any decision by the Montana Supreme Court to accept or to decline certification. If the Montana Supreme Court accepts certification, the parties shall then notify the clerk of this court within 14 days of the issuance of that Court's opinion. Submission of the questions presented in this appeal will be vacated by separate order pending the Montana Supreme Court's response to this request.
 
 VII
 
 27
 The following is a list of counsel appearing in this matter:
 
 Counsel for appellant Mary Golt:
 
 28
 William D. Jacobsen 600 Central Plaza, Suite 201 P.O. Box 2799 Great Falls, MT 59403 (406) 727 -0500
 
 
 29
 Counsel for appellee Aetna Life Insurance Company:
 
 
 30
 Robert J. Sullivan 300 Central Square 201 West Main P.O. Box 9199 Missoula, MT 59807
 
 
 31
 Counsel for appellee General American Life Insurance Company:
 
 
 32
 Robert C. von Ohlen, Jr. One First National Plaza 51st Floor Chicago, IL 60603 (312) 345-3000
 
 
 33
 John B. Austin One First National Plaza 51st Floor Chicago, IL 60603
 
 
 34
 (312)345-3000
 
 
 35
 Respectfully submitted,
 
 
 36
 Thomas M. Reavley,[9] Arthur L. Alarcon and M. Margaret McKeown,
 
 
 37
 Circuit Judges.
 
 
 38
 M. Margaret McKeown, Circuit Judge presiding
 
 
 
 Notes:
 
 
 [1]
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.
 
 
 [2]
 No application was submitted by Mr. Golt, nor did he tender a premium before his death.
 
 
 [3]
 MCA S 33-1-208 reads as follows:
 Life insurance, including credit life insurance, is insurance on human lives. The transaction of life insurance includes . . . additional benefits in event of death or dismemberment by accident or accidental means . . . .
 
 
 [4]
 MCA S 33-1-207 reads as follows:
 (1) Disability insurance, including credit disability insurance, is insurance of human beings:
 (a) against bodily injury, disablement, or death by accident or accidental means or the medical expense or indemnity involved; or
 (b) against disablement or medical expense or indemnity resulting from sickness.
 
 
 [5]
 MCA S 33-1-205 reads as follows:
 It is intended that certain insurance coverages may come within the definitions of two or more kinds of insurance as defined in this part, and the inclusion of such coverage within one definition shall not exclude it as to any other kind of insurance within the definition of which such coverage may likewise be reasonably included.
 
 
 [6]
 MCA S 33-20-1209 reads in relevant part:
 (1) The group life insurance policy shall contain a provision that if the insurance or any portion of it on a person covered under the policy ceases because of termination of employment .. . , such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance, provided application for the individual policy shall be made and the first premium paid to the insurer within 31 days after such termination . . . .
 
 
 [7]
 MCA S 33-20-1211 reads as follows:
 The group life insurance policy shall contain a provision that if a person insured under the policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with 33-20-1209 or 33-20-1210 and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.
 
 
 [8]
 MCA S 33-22-508 provides in pertinent part:
 (1) A group disability insurance policy or certificate of insurance . . . must contain a provision that if the insurance. . . ceases because of termination of the person's employment . . . the per-son is entitled to have issued to the person by the insurer, without evidence of insurability, group coverage or an individual policy or, in the absence of an individual policy issued by the insurer, a group policy issued by the insurer, of hospital or medical service insurance on the person . . . if application for the individual policy is made and the first premium tendered to the insurer within 31 days after the termination of group coverage.
 
 
 [9]
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.