Eugene H. **JOHNSON** and Diana K. **Johnson, Appellants,**

v.

**STATE of Alaska, Appellee.**

No. 3235.

Supreme Court of Alaska.

April 28, 1978.

---

Nissel A. Rose, Anchorage, for appellants.

Arthur H. Peterson, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

Nu-State Paving, Inc. sued to foreclose a lien on property owned by the Johnsons and others. Nu-State alleged that it had performed labor and supplied materials for the benefit of the property until October 9, 1974 and that the lien on which enforcement was sought was filed May 17, 1975. The lien was filed pursuant to AS 34.35.070.[1] The lien was filed more than 90 days

---

1. AS 34.35.070 provides in relevant part:
    (a) An original contractor, after the completion of his contract, and a mechanic, artisan, machinist, builder, lumber merchant, laborer, or other person, claiming the benefit of §§ 50–120 of this chapter, shall file a claim with the recorder of the recording district in which a building or other improvement, or a part of it, is located.
    (b) The claim shall be filed within 90 days after
    (1) the completion of his contract or the alteration or repair;

after Nu-State ceased work on the property and was therefore untimely under part (b) of the statute. Nu-State contended, however, that it was timely under part (d) because no notice of completion had been filed and the lien was thus filed within 90 days after the filing of such notice.

The Johnsons denied any personal obligation to Nu-State and filed affirmative defenses attacking the constitutionality of AS 34.35.070(d) through (f). Those subsections were added to Alaska's lien law by Chapter 89 of the 1974 Session Laws. The Johnsons claimed that Chapter 89 was void because there existed no record that it had received an affirmative vote of a majority of the membership of each house of the Alaska Legislature as required by Article II, Section 14 of the Alaska Constitution;[2] because the ayes and nays on final passage of the act were not entered in the journal of each house as required by Article II, Section 14; and because the act was so incomprehensible as to violate due process requirements, especially when construed with the existing subsections of AS 34.35.070.

The State of Alaska was allowed to intervene in order to defend the constitutionality of the act.[3] It moved for partial summary judgment, contending that the act was properly enacted and was sufficiently understandable, correctly interpreted, to escape constitutional infirmity.

The State's motion was granted and the court entered an order dismissing the Johnsons' affirmative defenses concerning the constitutionality of subsections (d) through (f). The order prepared by the state and signed by the court contained a determination that there was no just reason for delay in entering final judgment concerning the

(2) he ceases to labor on it from any cause; or
(3) he ceases to furnish materials for it.

. . . . .

(d) The owner of land which may be subject to a lien created under §§ 50–120 of this chapter shall, within 10 days after completion of a building or other improvement, record a notice of completion of the building or other improvement. In order to claim the benefit of §§ 50–120 of this chapter, every original contractor shall record his claim of lien no later than 90 days after the notice of completion has been recorded or within 90 days from completion of work performed at request of the owner, whichever is later. A person, other than the original contractor, claiming the benefits of §§ 50–120 of this chapter shall record his claim of lien no later than 90 days after the notice of completion has been recorded. The notice of completion provided for in this section shall be recorded in the office of the recorder of the district in which the property is situated, shall be signed and verified by the owner or his agent, and shall set out the following:
(1) the date of completion of the building or other improvement, or of a particular portion of the building or other improvement;
(2) the name and address of the owner;
(3) the nature of the interest or estate of the owner;
(4) sufficient legal description of the property; and
(5) the name of the original contractor, if any.
(e) Within five days after recording the notice of completion, the owner shall post a copy of the notice on the property in question and send a copy of the notice to the point of hire if known.
(f) A violation of the provisions of this section places the violator in the position of guarantor regarding another person who suffers damages which are proximately caused by the violation.

2. Article II, Section 14 of the Alaska Constitution provides:

*Passage of Bills.* The legislature shall establish the procedure for enactment of bills into law. No bill may become law unless it has passed three readings in each house on three separate days, except that any bill may be advanced from second to third reading on the same day by concurrence of three-fourths of the house considering it. No bill may become law without an affirmative vote of a majority of the membership of each house. The yeas and nays on final passage shall be entered in the journal.

3. Intervention was allowed pursuant to Civil Rule 24(c) which provides:

(c) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the ground therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. When the constitutionality of a state statute affecting the public interest is drawn in question in any action to which the state or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of Alaska of such fact, and the state shall be permitted to intervene in the action.

Johnsons' constitutional defenses and expressly directed the entry of final judgment. The effect of the order was to dispose of all of the issues in which the state was interested and because of the finding that there was no just reason for delay and the express direction for entry of judgment, the order became a final judgment under Civil Rule 54(b). The Johnsons have appealed from the order. Nu-State's claim for enforcement of its lien against the Johnsons remains to be tried in Superior Court.

We believe that the court abused its discretion in finding no just reason for delay and in directing the entry of final judgment. We therefore remand with directions to vacate that finding and direction.

■ The general rule governing appeals is that they may be taken only after the entire case is disposed of on all substantive issues.[4] This rule has at least two purposes. First, it is a rule of judicial economy. Issues which seem important at intermediate stages in litigation may become insignificant or moot when the final judgment is entered. Also, interlocutory review often causes delay and needless expense. Second, the rule is designed to insure that the questions presented on appeal have a full factual and legal setting in which the practical effect of the parties' contentions may be weighed. Piecemeal adjudication of some, but not all points of law governing a case

carries the risk that important considerations may be overlooked which would have been perceived had the entire case been presented.[5]

We stated in *City of Fairbanks v. Schaible*, 352 P.2d 129, 130 (Alaska 1960):

[T]he policy of permitting appeals only from final decisions has been demonstrated to be sound. To allow interlocutory review without restriction would be unwise, because in many cases this would add to the delay of litigation and would result in decisions on points that might otherwise be disposed of during the course of the litigation without substantial prejudice to anyone. The interlocutory issue which seemed so crucial at the time may fade into insignificance as the case progresses.

We have several times reaffirmed this general policy against piecemeal appeals. *GAAB v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972); *Green v. State*, 462 P.2d 994, 1002 (Alaska 1969); *Stokes v. Van Seventer*, 355 P.2d 594, 595 (Alaska 1960). The final judgment requirement also prevails in the federal appellate system.[6]

It is sometimes important that review not be delayed until all questions are decided by the trial court. Our Appellate Rules 23 and 24 provide for review of interlocutory orders in the discretion of this court where it appears that there are important and substantial reasons for deviating from the final judgment rule.[7]

---

4. This rule is codified in Appellate Rule 5 which provides:

An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or on the ground that the sentence is too lenient.

For a discussion of the history of the finality concept, see Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539 (1932).

5. As the Court of Appeals for the Second Circuit has stated: "We cannot decide the issues intelligently piecemeal and, if we so attempt, are sure to find ourselves uttering pious generalities only which will come back to plague us later." *Cott Beverage Corp. v. Canada Dry*

*Ginger Ale, Inc.*, 243 F.2d 795, 796 (2d Cir. 1957).

6. Chief Justice Warren in *Brown Shoe Co. v. United States*, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510, 524 (1962) stated:

The requirement that a final judgment shall have been entered in a case by a lower court before a right of appeal attaches has an ancient history in federal practice, first appearing in the Judiciary Act of 1789. With occasional modifications, the requirement has remained a cornerstone of the structure of appeals in the federal courts. (footnotes omitted)

7. For example, Appellate Rule 23(d) and (e) provide for interlocutory review:

(d) Where such an order or decision involves a controlling question of law as to

In cases involving multiple claims or multiple parties, Civil Rule 54(b) grants the power to the Superior Court in its discretion to make final an order determining at least one claim or the entire interest of at least one party.[8] Rule 54(b) represents a modification of an earlier finality rule. Before the adoption of Rule 54(b) of the Federal Rules, from which our Rule has been taken, each case was considered to be a single judicial unit. Where multiple claims were presented in the same case and some but not all claims were adjudicated, no appeal could be taken. It became apparent that under the Federal Rules, which encourage joinder of multiple claims and multiple parties in the same action, the losing party in some multiple claim or multiple party cases should be able to appeal without waiting for a determination of other claims. It was in response to this that Rule 54(b) was formulated. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1955).

■ There are two important limitations on the use of Rule 54(b). The first is that there must be a final decision on at least one claim or as to the entire interest of at least one party. The single judicial unit may be subdivided no further than that. Second, there must be a good reason for using Rule 54(b).

■ In order to activate Rule 54(b), the trial court must find "no just reason for delay." Such a finding should be premised on considerations similar to those governing this court's exercise of discretion in considering petitions for review from interlocutory orders under Appellate Rules 23 and 24.[9] The finding should not be made simply because counsel request it. There should be some danger of actual hardship caused by delay in entry of final judgment. The court should weigh the general policy against piecemeal appeals against the reasons advanced in favor of the proposed finding. The committee which drafted Federal Rule 54(b) noted that the rule was not intended to be a wholesale substitute for the single judicial unit concept, but that it provided "a discretionary power to afford a remedy in the infrequent harsh case . . . ."[10] That the federal counterpart of our Rule 54(b) should be sparingly used

---

which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.

(e) Where postponement of review until normal appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

Appellate Rule 24(a) provides that interlocutory review will be granted:

(1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

**8.** Civil Rule 54(b) provides:

(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**9.** See note 7, *supra.*

**10.** The 1946 Committee note to amended subsection (b) of Rule 54 of the Federal Rules can be found in 6 Moore's Federal Practice ¶ 54.-01[6], at 52–54 (2d ed. 1976).

has been recognized by the federal courts. *E. g., Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452, 455 (3rd Cir. 1958); *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2nd Cir. 1968).

The present occasion was clearly not one in which the special finding required by Civil Rule 54(b) was appropriately made. Neither the state nor the Johnsons will suffer any appreciable hardship if review awaits the final determination of this case. If we should hold that the 1974 amendments are unconstitutional, the Johnsons still would have to defend Nu-State's contract claim against them.[11] We are advised that the state legislature has by rule changed its voting practices in a manner consistent with the practices which the Johnsons contend are required by Article II, Section 14 of the Alaska Constitution. Therefore, it is unlikely that the validity of future legislation will be affected if the Johnsons should prevail on their appeal after the entire case is decided by the Superior Court.

Moreover, there is a substantial relationship between the Johnsons' claim that the statute is so incomprehensible as to be unconstitutional and the actual application of the statute to Nu-State's claim. For example, the state contends that the apparently conflicting deadlines of subsections (b) and (d) can be reconciled if (d) is read to apply only where a notice of completion is in fact filed. . If that is the proper construction, then it would seem that Nu-State's lien claim would fail entirely and the Johnsons would have no right or need to raise the constitutionality of the statute before this court. Thus, this situation is that if the Johnsons are right they will prevail on the lien claim and if the state is right, the Johnsons will also prevail. There will be no appeal, at least by the parties now before us, on the constitutional questions presented if the ordinary manner of proceeding is followed. This is a persuasive reason for deferring review until the entire case is decided.[12] Moreover, the case is here in an entirely abstract setting. We do not know how the statute will actually be applied. And the lienor, Nu-State, is not a party to this appeal. Our holding would not be res judicata as to Nu-State, and another appeal might well be necessary.

Furthermore, we see no benefits to be gained by deviating from the normal finality rule. As we have noted, if we should find the 1974 amendments unconstitutional, there still would be a trial in Superior Court on Nu-State's contract claim against the Johnsons. Assuming our decision came before trial, it is difficult to see how it could significantly shorten the trial or make it less expensive.

The case is remanded to the Superior Court with directions to vacate that portion of its order finding no just reason for delay and directing entry of final judgment.

11. Nu-State has moved for summary judgment solely on its contract claim; the motion was denied and the factual questions concerning that claim remain to be litigated.

12. *See Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452 (3rd Cir. 1958).