**Homer COLE and Annette Mayac, Appellants,**

v.

**STATE FARM INSURANCE COMPANY, Appellee.**

No. S–11460.

Supreme Court of Alaska.

Jan. 27, 2006.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellants.

Kimberlee A. Colbo and Jimmy E. White, Hughes Thorsness Powell Huddleston & Bauman, L.L.C., Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Homer Cole and Annette Mayac divorced each other, reunited, and lived together without remarrying. After being hit and injured by a car, Cole sought medical and underinsured motorist payments under Mayac's State Farm automobile insurance policy, which named Mayac as the person insured and also extended coverage to the named insured's "spouse." At issue in this appeal is whether Cole was entitled to coverage as Mayac's spouse despite not being legally married. Because the policy unambiguously defined spouse to mean a legally married

husband or wife and because Cole has failed to show that a broader interpretation is needed to avoid impermissible marital status discrimination, we affirm the superior court's judgment declaring that Cole was not entitled to coverage as Mayac's spouse.

## II. FACTS AND PROCEEDINGS

Homer Cole and Annette Mayac married in the mid–1980s and divorced in 1993. After marrying and separating from another woman, Cole reunited with Mayac in 1995 but did not remarry her. Cole had no driver's license, so the couple's car was titled, registered, and insured in Mayac's name. In May 2000, as Cole was walking along a street in Anchorage, he was hit by a motorist and severely injured. A short time before, Cole had been riding in Mayac's car, and the car was nearby when the accident occurred.[1]

Mayac's car was insured by State Farm Insurance Company. Her policy provided for medical payments and uninsured/underinsured motorist (UM/UIM) coverage. Under the policy, this coverage extended to the named insured, Mayac, and "his or her spouse." The policy defined "spouse" as "your husband or wife who resides primarily with you." The policy also extended coverage to "any other person" injured "while occupying" Mayac's car.

As a result of his injuries, Cole claimed medical payments and UIM coverage under Mayac's State Farm policy. State Farm denied coverage; Cole then filed an action for declaratory relief, alleging that he was covered under Mayac's policy, both as "her spouse" and as a person injured "while occupying" her car.

■ State Farm moved for summary judgment; Cole cross-moved for summary judgment. The superior court granted partial summary judgment to State Farm, ruling that, because Cole was not legally married to Mayac, he did not qualify for coverage under the policy as Mayac's "spouse." The court denied summary judgment on the issue of Cole's coverage as an occupant of Mayac's car, finding genuine issues of material fact in dispute on that point. The parties stipulated to the entry of a partial final judgment under Alaska Civil Rule 54(b) on the court's summary judgment order declaring that the State Farm policy did not cover Cole as Mayac's spouse. After the superior court entered the judgment, Cole filed this appeal.[2]

1. Just how close Cole was to Mayac's car when he was hit and what direction he was headed are disputed issues, but the dispute is not relevant to this appeal.

2. Although there is arguably good reason to question whether entry of a partial final judgment was appropriate here under the standard set out in Civil Rule 54(b), we decline to address this procedural issue and will decide the appeal on its merits. We do so because substantial time has elapsed since the superior court entered its partial judgment; meanwhile, both parties have fully briefed the appeal, neither has addressed the procedural issue, and the appeal has been argued and submitted for a decision on the merits. Given these circumstances, we believe that it would be unfair to dismiss the appeal based on a sua sponte finding that the partial final judgment should not have been entered.

We nevertheless take this occasion to note that this case illustrates a recurring procedural problem. Under our current Appellate Rules, when parties stipulate to entry of a partial final judgment and the trial court enters the judgment based on the stipulation, neither party is required to alert this court that the appeal is taken from a partial final judgment or to brief the issue of whether entry of that judgment was properly granted. Consequently, the issue can easily remain undetected until it becomes functionally unreviewable. Yet even when entered by stipulation, partial final judgments deserve careful appellate review: given the law's fundamental aversion to piecemeal appeals, see *Johnson v. State*, 577 P.2d 706, 709 (Alaska 1978), the interests of justice often will militate against the entry of a partial judgment that the parties might find convenient.

To prevent uncontested but arguably improvident partial final judgments from continuing to evade appellate review, we request the Appellate Rules Committee to recommend amendments to the Appellate Rules that would ensure early identification of appeals from judgments entered under Civil Rule 54(b) and enable this court to require preliminary briefing and resolution of questions concerning the appropriateness of the partial judgments at issue in such cases.

Our referral of this issue to the committee should not obscure another important point. A trial court should not enter a Rule 54(b) certificate "simply because counsel request it." *Johnson*, 577 P.2d at 710. The device should be used only infrequently and only when there is "some danger of actual hardship caused by delay in entry of final judgment." *Id.*

## III.  DISCUSSION

In challenging the superior court's summary judgment order, Cole advances two reasons why the spousal coverage provision of Mayac's State Farm policy should be broadly construed to cover him as Mayac's spouse.  First, Cole argues, the policy's terms are ambiguous, so they should be broadly construed to protect the reasonable expectations of the insured.  Second, he insists, the policy should be interpreted broadly for reasons of public policy—to avoid potential conflict with the Alaska Human Rights Act's prohibition against marital status discrimination and with two provisions of the Alaska Insurance Code that, in Cole's view, are meant to complement the Human Rights Act's prohibition.  We address each argument in turn.[3]

### A.  Reasonable Expectations

We have previously recognized that "because insurance policies are contracts of adhesion, they are construed according to the principle of 'reasonable expectations.' "[4] Here, Cole contends that the State Farm policy's use of the word "spouse" is ambiguous enough to trigger the reasonable expectations doctrine, so as to require the State Farm policy to be construed in favor of coverage.  We consider four factors in determining what reasonable expectations an insurance policy will generate:  (1) the disputed policy language; (2) other related policy language; (3) relevant extrinsic evidence; and (4) precedent interpreting similar provisions.[5] Here, Mayac's State Farm policy expressly extends coverage to her "spouse" and defines "spouse" as "your husband or wife who resides primarily with you."  The policy does not define "husband" or "wife."  But in a separate provision extending coverage to any resident "relative," the policy does define "relative" as "a person related to you or your spouse by blood, marriage or adoption[.]"  Cole claims that this singular reference to

"marriage" in the policy's resident-relative provision casts doubt on what meaning the policy attributes to "spouse" in its spousal coverage provision.  Specifically, Cole reasons, by using the word "marriage" to define the scope of its resident-relative coverage while omitting the word in defining its spousal coverage, the State Farm policy creates the "obvious implication ... that 'marriage' is required for the coverage provided to the insured's resident 'relatives', but [not] for coverage provided to the insured's 'spouse'."

We disagree.  The policy's reference to "marriage" in its definition of "relative" simply demonstrates an intent to expand the definition of "relative" beyond the word's usual meaning, so that it encompasses relationships other than blood relationships—specifically, relationships by marriage and adoption.  If this reference to "marriage" implies anything, then, it suggests that, had the policy meant the term "spouse" to extend beyond formal marriages, it would have defined "spouse" to include both "a husband or wife by marriage *or by common law.*"

Cole identifies no other policy language that creates ambiguity on this point or that might support a reasonable expectation that "spouse" includes unmarried cohabitants.  *Webster's Third New International Dictionary* defines "spouse" as "a man or woman joined in wedlock: a married person: husband, wife."[6]  The policy's definition of "spouse" as "your husband or wife who resides primarily with you" thus appears to be clear and complete as a reference to formally married couples.

Notably, in *Serradell v. Hartford Accident and Indemnity Co.*, we considered a similar spousal coverage provision contained in a policy for life insurance; in that context, we saw no room to doubt the provision's meaning, expressly concluding "that there is no ambiguity in the ... policy's use of the term 'spouse' which would lead a lay person to

---

3.  We review summary judgment orders de novo.  *Odsather v. Richardson,* 96 P.3d 521, 523 n. 2 (Alaska 2004).  When reviewing questions of law, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."  *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4.  *West v. Umialik Ins. Co.,* 8 P.3d 1135, 1138 (Alaska 2000).

5.  *Id.*

6.  Webster's Third New International Dictionary 2208 (1966).

expect to recover death benefits for the death of his unmarried cohabitant."[7]

Cole nevertheless points to extrinsic evidence that, in his view, tends to create doubt; citing the 2003 U.S. Census Report on Marital Status, Cole insists that "millions of couples in this country and thousands of couples in this state are living together as husband and wife without the benefit of a legal certificate of marriage in the same relationship as possessed by their married neighbors." In Cole's view, "[t]his creates an ambiguity which should be construed in favor of coverage."

Yet we rejected essentially the same argument in *Serradell*, quoting approvingly from the Minnesota Supreme Court's decision in *Hedlund v. Monumental General Insurance Co.*:

"spouse" is commonly known to mean husband or wife. "The legal, as well as the ordinary, meaning of 'spouse' is one's wife or husband." We realize that unmarried couples are increasingly cohabiting and that many of these relationships are permanent and analogous to marital relationships. But they are not spousal relationships . . . . [8]

The fact that many unmarried couples live together and view their relationships as being similar to marriage hardly establishes that they actually regard themselves as "spouses" or that they would expect to be covered under a policy that expressly limited coverage to the named insured and his or her husband or wife. Hence, Cole's statistics do not support his contention that he could reasonably have expected to be covered as Mayac's spouse.

In spite of *Serradell*, Cole insists that two other Alaska precedents support his reasonable expectations argument: *Greer Tank &* *Welding, Inc. v. Boettger*[9] and *Burgess Construction Co. v. Lindley*.[10] But these cases are inapposite. In *Greer*, a wrongful death case, we simply held that the deceased's unmarried cohabitant qualified as a beneficiary under a provision of the Alaska Wrongful Death Act that expressly allowed wrongful death claims by a surviving spouse and "other dependents."[11] And in *Burgess*, we relied on the fact that the worker's compensation act expressly defined the term "married" to include "a person who is divorced but is required by the decree of divorce to contribute to the support of his former wife"[12] in order to hold that a deceased worker's former spouse who had been awarded the right to regular alimony could receive worker's compensation benefits as the worker's "surviving wife."[13] In both *Burgess* and *Greer*, then, we simply applied express statutory language that allowed the claims under the specific facts at issue. As we subsequently emphasized in *Serradell*, neither of these decisions "established an exception to the rule against recognition of common law marriage."[14]

Hence, considering the language of the State Farm policy provision disputed here, other related policy language, extrinsic evidence bearing on the issue of reasonable expectations, and pertinent case law, we find no plausible basis for concluding that a reasonable purchaser of the disputed policy would have expected "spouse" to include a live-in companion who was not legally married.

## B. Public Policy

■ Cole alternatively maintains that, even if the State Farm policy's language is unambiguous, its spousal coverage provision must be broadly construed for reasons of public policy. Specifically, Cole maintains

---

**7.** 843 P.2d 639, 641 (Alaska 1992) (policy provided: *"Spouse* means your spouse unless: (a) you and your spouse are legally separated or divorced.").

**8.** *Hedlund v. Monumental Gen. Ins. Co.*, 404 N.W.2d 371, 373–74 (Minn.App.1987), *quoted in Serradell*, 843 P.2d at 641 n. 6 (internal citations omitted).

**9.** 609 P.2d 548 (Alaska 1980).

**10.** 504 P.2d 1023 (Alaska 1972).

**11.** 609 P.2d at 550 (quoting AS 09.55.580(a)).

**12.** 504 P.2d at 1024 (quoting AS 23.30.265(15)).

**13.** *Id.* at 1025.

**14.** 843 P.2d at 642.

that the Alaska Human Rights Act takes a strong stand against discrimination on the basis of the marital status;[15] he urges us to find that this policy informs two provisions of the Alaska Insurance Code that generally prohibit "arbitrary or unfair discrimination" by state-regulated insurers.[16] Cole points to our decision in *University of Alaska v. Tumeo*.[17] There, we upheld a decision in which the superior court ruled that the Human Rights Act's bar against marital status discrimination precluded the University of Alaska from giving family benefits to married employees while denying these benefits to similarly situated employees who had permanent domestic partners but were not legally married.[18] Here, in light of *Tumeo*, Cole reasons, "it would be entirely inconsistent to argue that an employer could not offer insurance benefits to its employees on the basis of marital status, but that an insurer could discriminate in offering insurance policies to the public on that basis."

This argument is unavailing. As an initial matter, it ignores the amendments to the Human Rights Act that Alaska's legislature enacted in response to the superior court's ruling in *Tumeo*. The act now specifically allows employers like the University to give preferential health and retirement benefits to family members of legally married employees.[19] In its current form, then, the Human Rights Act lends no support to Cole's argument based on the need to avoid inconsistency. Moreover, even if we assume that Cole is correct in maintaining that the spirit of the Human Rights Act's policy against marital status discrimination might be echoed in the anti-discrimination provisions of the Alaska Insurance Code, Cole's policy-based argument would still be destined to fail on the current record, because Cole has neglected to advance any facts establishing a prohibited pattern or practice of marital status discrimination.

Cole also contends that insurance is a "public accommodation" under the Human Rights Act.[20] He correctly notes that an insurance office is specifically listed as a public accommodation under the Americans with Disabilities Act.[21] But similar language is absent from the Human Rights Act. In addition, the Human Rights Act dates from 1965, well before the ADA, and Cole fails to ex-

**15.** AS 18.80.200 lays out the purpose of the Human Rights Act, providing in part:

(b) Therefore, it is the policy of the state and the purpose of this chapter to eliminate and prevent discrimination in employment, in credit and financing practices, in places of public accommodation, in the sale, lease, or rental of real property because of race, religion, color, national origin, sex, age, physical or mental disability, marital status, changes in marital status, pregnancy or parenthood.

**16.** AS 21.36.090(c) provides:

A person may not make or permit arbitrary or unfair discrimination between insureds or property having like insuring or risk characteristics, in the premium or rates charged for a policy or contract of ... transportation insurance, or in the dividends or other benefits payable on the insurance, or in the selection of it, or in any other of the terms and conditions of the insurance.

Similarly, AS 21.36.120(c) provides:

An insurer may not make or permit an unfair discrimination between insureds or property having like insuring or risk characteristics, in the premium or rates charged for insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the insurance.

**17.** 933 P.2d 1147 (Alaska 1997).

**18.** *Id.* at 1156.

**19.** *Id.* at 1151. AS 18.80.220(c)(1) now provides:

Notwithstanding the prohibition against employment discrimination on the basis of marital status or parenthood under (a) of this section,
(1) an employer may, without violating this chapter, provide greater health and retirement benefits to employees who have a spouse or dependent children than are provided to other employees.

**20.** Alaska's Human Rights Act makes it unlawful for an "owner, lessee, manager, agent, or employee of a public accommodation" to discriminate on a number of bases, including on the basis of marital status. AS 18.80.230.

**21.** "The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—... (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, *insurance office*, professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7) (2005) (emphasis added).

plain why it should be understood to incorporate the ADA's later definition of public accommodation. A likely source of the term "public accommodation" for the Human Rights Act was Title II of the federal Civil Rights Act of 1964, which defines public accommodation to include hotels, restaurants, cinemas, and sports arenas, but it does not expressly include insurance offices.[22]

Alaska has other statutes that specifically protect insurance customers from discrimination. These statutes forbid "unfair discrimination between insureds or property having like insuring or risk characteristics in any . . . of the terms and conditions of the insurance."[23] But as State Farm argues, the costs of providing insurance would, other factors being equal, likely be higher for unmarried couples than for married couples. The insurer would have the difficult and expensive task of determining who is and who is not in a sufficiently marriage-like relationship. Thus the "insuring and risk characteristics" between otherwise similarly situated married and unmarried couples would be different. To the extent discrimination on the basis of such a distinction is not prevented under a specific statute or constitutional provision, it survives the general anti-discrimination statutory challenge.

This does not necessarily mean that an insurance company is free to completely deny insurance coverage to unmarried couples. But it does mean that premiums might be different as between married and unmarried couples. Cole has failed to show that when Mayac bought the State Farm policy, she actually sought or expected to obtain coverage for Cole as her spouse.[24] Nor has Cole attempted to show that he ever attempted to buy coverage for himself from State Farm but was refused. And the record is silent as to whether, or to what extent, State Farm might have been able to sell such coverage, or equivalent coverage, had Mayac or Cole asked. In effect, then, Cole simply asks us to assume that the mere existence of a provision in the State Farm policy limiting coverage to a legally married couple amounts to a prima facie showing of marital status discrimination. Yet Cole fails to cite any authority suggesting that a comparable policy provision, standing alone, can establish an impermissible act of marital status discrimination. Nor are we aware of any such authority; indeed, cases elsewhere have uniformly upheld identical policy restrictions without any mention of potential discrimination issues.[25] In short, on the current record, Cole's public policy argument appears to be both factually and legally groundless.

## IV. CONCLUSION

Because neither Cole's reasonable expectations argument nor his public policy argument provides any basis for construing the

---

**22.** 42 U.S.C. § 2000a(b) (2005) provides, in part:

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

**23.** AS 21.36.090(c). *See also* AS 21.36.120(c) (nearly identical language).

**24.** Relatedly, we note that Mayac named herself and her three children as insured persons on the policy's declarations page but did not name Cole as a spouse or in any other capacity.

**25.** *See, e.g., Sypien v. State Farm Mut. Auto. Ins. Co.,* 111 Ill.App.3d 19, 66 Ill.Dec. 780, 443 N.E.2d 706 (1982); *Menchaca v. Farmers Ins. Exchange,* 59 Cal.App.3d 117, 130 Cal.Rptr. 607 (1976); *Causey v. Valentine,* 271 So.2d 365 (La. App.1972); *Harleysville Mut. Casualty Ins. Co. v. Carroll,* 123 A.2d 128 (Del.Super.1956).

State Farm policy broadly, so as to cover an unmarried "spouse," we AFFIRM the superior court's order granting summary judgment on this issue to State Farm.